UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division



FILED

SEP - 8 2015

CLERK, US DISTRICT COURT
NORFOLK, VA

PRISON LEGAL NEWS, a project
of the HUMAN RIGHTS DEFENSE
CENTER,

        Plaintiff,

v.                                                          Civil No. 2:13cv424

KEN STOLLE, Sheriff for Virginia
Beach, Virginia, et. al,

        Defendants.

## OPINION AND ORDER

This matter is before the Court on a motion seeking attorney's fees and litigation expenses filed by Prison Legal News, a project of the Human Rights Defense Center, ("Plaintiff," or "PLN"). Such motion is filed pursuant to 42 U.S.C. § 1988, and is predicated on Plaintiff's success in obtaining permanent injunctive relief on its § 1983 claims through summary judgment as well as securing a subsequent negotiated consent decree. Defendant Ken Stolle, the Sheriff of Virginia Beach, Virginia, and the individually named Sheriff's deputies (collectively, "Defendants"), filed a joint brief acknowledging that a fee award is appropriate, but challenge the extent of the award requested by Plaintiff. For the reasons

discussed below, Plaintiff's motion seeking attorney's fees is **GRANTED**, although the amount of fees requested is reduced from the amount sought by Plaintiff.

## I. Factual and Procedural Background

The Court incorporates herein the sections entitled "Factual and Procedural Background" in its December 8, 2014 Opinion and Order and March 31, 2015 Opinion and Order. ECF Nos. 65, 84. In short, PLN is the publisher of a monthly magazine titled "*Prison Legal News*," which is marketed mainly to inmates. Over the past several years, inmates at the Virginia Beach Correctional Center ("VBCC"), which is operated by Sheriff Stolle and the Virginia Beach Sheriff's Office ("VBSO"), have not been permitted to receive the monthly *Prison Legal News* magazine due to its alleged violation of the VBSO "sexually explicit" materials policy and "ordering forms" policy. Plaintiff's lawsuit challenged Defendants' exclusion of *Prison Legal News* magazine from VBCC.

In this Court's December 8, 2014 Opinion, the Court ruled in Defendant's favor regarding the exclusion of *Prison Legal News* magazine from VBCC based on the VBSO "ordering forms" policy, and reserved ruling on the "sexually explicit" materials policy.[1] In this Court's March 31, 2015 Opinion, the Court found

---

[1] The Court did, however, conclude that Defendants were shielded by qualified immunity as to money damage claims involving their maintenance/enforcement of the "sexually explicit" materials policy.

that the VBSO had previously maintained an unconstitutionally overbroad "sexually explicit" materials policy, and although such policy had been amended during the course of the litigation, the Court entered a permanent injunction precluding the VBSO from returning to its former policy. Additionally, the Court found that Defendants had previously engaged in due process violations in their handling of magazine censorship decisions, and although such procedures had been modified and corrected during the course of the litigation, the Court entered a permanent injunction precluding the VBSO from returning to its prior notification and censorship practices. After the issuance of the Court's March 31, 2015 Opinion, the parties continued to dispute the degree of nominal damages that should be awarded to PLN for the due process violations, as well as whether punitive damages should be awarded. Prior to a bench-trial being conducted to resolve such remaining dispute, the parties reached a settlement and a consent decree was entered. Plaintiff thereafter filed this motion as the consent decree did not include an agreement regarding attorney's fees.

## II. Standard for Attorney's Fee Award

### A. Right to Fees

The instant civil case was filed pursuant to 42 U.S.C. § 1983 seeking to remedy the alleged depravation of constitutional rights, and it is undisputed that: (1) pursuant

3

to 42 U.S.C. § 1988, this Court has discretion to award reasonable attorney's fees and litigation expenses to a "prevailing party" in a § 1983 action; and (2) that PLN qualifies as a "prevailing party" in this case and is thus entitled to at least a partial award of fees, as well as litigation expenses. 42 U.S.C. § 1988; see S-1 & S-2 By & Through P-1 & P-2 v. State Bd. of Educ. of N. Carolina, 21 F.3d 49, 51 (4th Cir. 1994) (indicating that a "prevailing party" may be awarded attorney's fees if it obtains "an enforceable judgment, consent decree, or settlement giving some of the legal relief sought in a § 1983 action" (citing Farrar v. Hobby, 506 U.S. 103 (1992))). It is well-established that the purpose of fee shifting under § 1988 is to "'ensure effective access to the judicial process,' for persons with civil rights grievances." Lefemine v. Wideman, 758 F.3d 551, 555 (4th Cir. 2014) (quoting Hensley v. Eckerhart, 461 U.S. 424, 429 (1983)). Accordingly, "[i]n light of Section 1988's language and purpose, a prevailing plaintiff 'should ordinarily recover an attorney's fee unless special circumstances would render such an award unjust.'" Id. (quoting Hensley, 461 U.S. at 429). Here, Plaintiff's entitlement to an award of attorney's fees and litigation expenses is well-supported by the record, and thus, the only remaining task is determination of a "reasonable fee award" that is appropriate in this case. Id. at 559.

## B. Calculation of "Reasonable" Fee Award

The Fourth Circuit has outlined a three step framework for calculating a reasonable attorney's fee:

> First, the court must "determine the lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." Robinson v. Equifax Info. Servs., LLC, 560 F.3d 235, 243 (4th Cir. 2009). To ascertain what is reasonable in terms of hours expended and the rate charged, the court is bound to apply the factors set forth in Johnson v. Georgia Highway Express Inc., 488 F.2d 714, 717-19 (5th Cir. 1974). Id. at 243-44. Next, the court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." Id. at 244. Finally, the court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." Id.

McAfee v. Boczar, 738 F.3d 81, 88 (4th Cir. 2013), as amended (Jan. 23, 2014) (footnote omitted).

The calculation of a lodestar figure is "[t]he most useful starting point for determining the amount of a reasonable fee," because it "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433; see Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 551 (2010) (characterizing the lodestar calculation as "the guiding light of . . . fee-shifting jurisprudence") (quotation marks and citation omitted). The fee applicant bears the burden of proving the reasonableness of the hours expended and the requested hourly rates, which generally requires submission of the attorney's own affidavit and timesheets as well as

"'satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which [the attorney] seeks an award.'" Grissom v. The Mills Corp., 549 F.3d 313, 321 (4th Cir. 2008) (quoting Plyler v. Evatt, 902 F.2d 273, 277 (4th Cir. 1990)). In evaluating the submissions in order to determine both a reasonable rate and a reasonable number of hours expended, the lodestar analysis is guided by the following twelve factors (the "Johnson factors"):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

Barber v. Kimbrell's Inc., 577 F.2d 216, 226 n.28 (4th Cir. 1978) (adopting the twelve factors identified by the Fifth Circuit in Johnson v. Georgia Highway Express Inc.); cf. Perdue, 559 U.S. at 550-52 (explaining why the objective lodestar approach is superior to the subjective approach outlined in Johnson, but failing to hold that it is improper to be informed by the Johnson factors when performing a lodestar analysis). Because Fourth Circuit precedent requires this Court to be

guided by the Johnson factors in determining the lodestar figure, "to the extent that any of the Johnson factors has already been incorporated into the lodestar analysis," such factor(s) should not later be considered a second time to make an upward or downward adjustment to the lodestar figure because doing so would "inappropriately weigh" such factor. McAfee, 738 F.3d at 91.

The second step in the fee calculation requires the Court to exclude fees for counsel's time spent on unsuccessful claims that are unrelated to the successful claims. Robinson, 560 F.3d at 244; see Hensley, 461 U.S. at 435 ("The congressional intent to limit awards to prevailing parties requires that . . . [unrelated claims based on different facts and legal theories] be treated as if they had been raised in separate lawsuits, and therefore no fee may be awarded for services on the unsuccessful claim[s]"). The Supreme Court has recognized that "[i]t may well be that cases involving such unrelated claims are unlikely to arise with great frequency," because "[m]any civil rights cases will present only a single claim," and in other cases, the claims "will involve a common core of facts or will be based on related legal theories." Hensley, 461 U.S. at 435. In such latter circumstance, "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," with the

nature of the lawsuit precluding it from being "viewed as a series of discrete claims." Id.

The third and final step, after a lodestar calculation has been made and any unsuccessful efforts on unrelated claims have been excluded, requires the Court to award "'some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff.'" Grissom, 549 F.3d at 321 (quoting Johnson v. City of Aiken, 278 F.3d 333, 337 (4th Cir. 2002)). It is appropriate for the Court to reduce an award at the third step of the analysis if "'the relief, however significant, is limited in comparison to the scope of the litigation as a whole.'" McAfee, 738 F.3d at 92 (quoting Hensley, 461 U.S. at 439-40). "What the court must ask is whether 'the plaintiff achieved a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award.'" Id. (quoting Hensley, 461 U.S. at 434). Accordingly, when "a plaintiff has achieved only partial or limited success, the product of hours reasonably expended on the litigation as a whole times a reasonable hourly rate may be an excessive amount" even in cases "where the plaintiff's claims were interrelated, nonfrivolous, and raised in good faith." Hensley, 461 U.S. at 436. An attorney's fee award under § 1988 is therefore not driven by whether it was reasonable to file suit or whether plaintiff's counsel litigated the case "with devotion and skill"; rather,

"the most critical factor is the degree of success obtained."
Id.

### III. Discussion

#### A. Lodestar Analysis

##### 1. Number of Reasonable Hours Expended

As indicted above, it is undisputed that Plaintiff is a "prevailing party" and Defendants do not contest a reasonable fee award to compensate Plaintiff's outside counsel in this case. Defendants do, however, challenge the propriety of any fee award to Plaintiff's in-house counsel. Additionally, Defendants further argue that many of the hours for which Plaintiff seeks compensation are duplicative hours spent in conferences, time spent on tasks not sufficiently related to the litigation, including pre-complaint time, and travel time inappropriately billed at full hourly rates. Defendants also seek an overall reduction due to the degree of success obtained in this case.

In analyzing Defendants' challenges to the hours expended, the Court considers the relevant Johnson factors, including the time and labor expended by the attorneys of various skill levels and experience, the difficulty of the questions raised, the skill required to perform the services rendered, and any time limitations imposed by the circumstances of this case. Barber, 577 F.2d at 226 n.28.

### a. In-House/Nonprofit Counsel

The law establishes that counsel at a nonprofit legal services organization, or in-house counsel, performing litigation related work that is otherwise compensable is entitled to an attorney's fee award at prevailing market rates. See Nat'l Wildlife Fed'n v. Hanson, 859 F.2d 313, 319 (4th Cir. 1988) (addressing "nonprofit legal service organizations" (citing Blum v. Stenson, 465 U.S. 892-96 (1984))); Lake Wright Hospitality, LLC v. Holiday Hospitality Franchising, Inc., No. 2:07cv530, 2009 WL 4841017, at *10 (E.D. Va. Oct. 23, 2009) (explaining that in-house counsel may be compensated at an hourly fee for litigation tasks "that ordinarily would be performed by outside counsel" but should not be compensated when merely acting as a liaison or corporate contact or representative). Here, Plaintiff's amended complaint self-identifies PLN as "a project of the Human Rights Defense Center ('HRDC')" and identifies HRDC as a non-profit legal services organization. Amend. Compl. 2, ECF No. 17. The affidavit submitted by Lance Weber, "general counsel" for HRDC indicates that HRDC provides legal services to PLN without charge. ECF No. 91. Accordingly, while the legal relationship between entities is somewhat unclear, for simplicity, the HRDC attorneys who worked on this case will be referred to herein as PLN's "in-house counsel."

To the extent Defendants make broad objections to the Court awarding any attorney's fees to Plaintiff's in-house counsel, ECF No. 100, at 3-4, 6-7, such argument is rejected as the record before the Court demonstrates that in-house counsel was not merely acting as a client liaison, but was instead performing tasks necessary to the litigation that would otherwise have been performed by outside counsel, such as drafting discovery objections, drafting briefs or portions thereof, performing legal research associated with the case, and preparing or editing declarations.     Similarly, Defendants' suggestion that Plaintiff's in-house counsel should not be compensated because the two outside attorneys were the only point-of-contact for Defendants' attorneys is not supported by any citation to case law nor is it otherwise persuasive.  Less experienced attorneys regularly perform compensable legal research and similar litigation tasks that assist lead counsel, yet these assisting attorneys may never interact directly with opposing counsel—indeed if they attended any meetings or participated in conference calls with opposing counsel, such contact would likely be subject to attack as constituting unnecessary duplication of efforts.

Although Defendants' blanket objections are rejected, consistent with additional arguments advanced by Defendants, the Court does consider the nature of the activities performed by

Plaintiff's in-house counsel (and outside counsel) in making adjustments to the hours claimed in Plaintiff's motion. As set forth below, such adjustments include consideration of the number of internal conferences billed, in-house counsel's time that appears to constitute general monitoring of the case—as contrasted with the performance of necessary litigation tasks, in-house counsel's time that, based on the manner in which it was documented, appears to have been spent performing PLN's or HRDC's general missions, as well as other matters.

### b. Pre-Complaint work

Defendants argue in their brief in opposition that the Court should not allow the recovery of fees for work performed prior to the filing of the complaint other than hours specifically devoted to drafting the complaint. ECF No. 100, at 9-10. Defendants are correct that "it is difficult to treat time spent years before the complaint was filed as having been 'expended on the litigation' or to be fairly comprehended as 'part of the costs' of the civil rights action." Webb v. Bd. of Educ. of Dyer Cnty., Tenn., 471 U.S. 234, 242 (1985). That said, the Supreme Court has likewise recognized that, "[o]f course, some of the services performed before a lawsuit is formally commenced . . . are performed 'on the litigation' . . . [including] the work associated with the development of the

theory of the case." Id. at 243. Moreover, in Webb, Justice Brennan explained as follows in his separately authored opinion:

> There is certainly nothing in § 1988 that limits fee awards to work performed after the complaint is filed in court. For example, it is settled that a prevailing party may recover fees for time spent before the formal commencement of the litigation on such matters as attorney-client interviews, investigation of the facts of the case, research on the viability of potential legal claims, drafting of the complaint and accompanying documents, and preparation for dealing with expected preliminary motions and discovery requests. 2 M. Derfner & A. Wolf, Court Awarded Attorney Fees ¶ 16.02[2][b], p. 16-15 (1984). This time is "reasonably expended on the litigation," Hensley v. Eckerhart, 461 U.S. 424, 433 (1983), in part because careful prefiling investigation of the facts and law is required by the ethical rules of our profession, the Federal Rules of Civil Procedure, and the realities of civil rights litigation.

Id. at 250 (Brennan, J., concurring in part and dissenting in part) (footnotes omitted).

In addition to the above, as argued here by Plaintiff, to the extent that Bell Atl. Corp. v. Twombly, 550 U.S. 544 (2007), and its progeny, modified the pleading standard in federal courts, there is arguably now an even greater need to conduct a thorough pre-filing investigation. Moreover, subsequent to Twombly, an opinion from a unanimous Supreme Court favorably cited Justice Brennan's analysis in Webb, explaining that "[t]he fact that some of the claimed fees accrued before the complaint was filed is inconsequential" because "[i]nvestigation, preliminary legal research, drafting of demand letters, and

working on the initial complaint are standard preliminary steps toward litigation." Ray Haluch Gravel Co. v. Central Pension Fund of Int'l Union of Operating Engineers & Participating Employers, 134 S. Ct. 773, 782-83 (2014).

Based on the above, to the extent that Defendants advance a blanket challenge to all pre-filing work other than time spent actually drafting the complaint, such challenge is rejected. That said, the Court agrees with Defendants that certain activities in this case performed by counsel or paralegals more than a year prior to the filing of the complaint, as documented on the exhibits before the Court, appear to involve activities that are not reasonably tied to the litigation. Such hours involve, among other things, exchanging communications with prisoner subscribers, compiling contact information of subscribers, and seeking out new potential subscribers. Accordingly, as set forth below, a review of the case-specific record reveals that some pre-complaint hours are not compensable, while other time spent investigating the facts and researching the law are compensable.

### c. Reduction of Hours to Reflect Duplication of Efforts, Hours Appearing Unrelated to the Litigation, and Hours Lacking Sufficient Documentation

Although the Court finds that Plaintiff has submitted sufficient evidence to demonstrate that a fee award is appropriate as to all counsel that worked on this case, as well

as two paralegals, a review of the billing records submitted by Plaintiff reveals that Plaintiff has failed to demonstrate that all of the claimed hours are both "reasonable" and performed "on the litigation."    In considering the "time and labor expended" by the various attorneys, and the explanation of the tasks performed by such individuals, the Court finds that there was some degree of unnecessary duplication of efforts, certain hours that appear on their face to be unrelated to the litigation, and certain hours for which inadequate documentation was provided.

Having carefully reviewed Plaintiff's evidence, the Court makes the following adjustments to the hours requested in order to eliminate hours that Plaintiff has failed to demonstrate were reasonably billed to this case.  In making such relatively minor adjustments, the Court notes that Defendants have not specifically identified entries they believe to be improper, nor have they tallied the hours they believe to be improper in order to suggest a specific reduction to the Court.   The Court does, however, find that Defendants' blanket objections coupled with this Court's obligation to allow an attorney's fee award only to the extent it is "reasonable" warrants some degree of adjustment to the hours claimed.   Cf. In re A.H. Robins Co., Inc., 86 F.3d 364, 373 (4th Cir. 1996) (noting, in a case outside the § 1983 context, that "[a] court abuses its discretion if it allows a

fee without carefully considering the factors relevant to fair compensation." (citing Barber, 577 F.2d at 226)).

### i. Jeffery Fogel, Lead Outside Counsel

Mr. Fogel requests compensation for 249.8 hours in this matter. The vast majority of the billed time submitted by Mr. Fogel appears well-documented, directly related to the litigation, and reasonable. That said, there are various time entries, some of which predate the complaint, which reference internal conferences with co-counsel Steven Rosenfield ("confer SDR," "emails w/ SDR," etc.). ECF No. 89-1. Such time entries suggest a degree of duplication of efforts, particularly because both attorneys have approximately forty years of experience. Moreover, many of such entries fail to document what matters were discussed, how they were related to the case, or why they advanced the efficient litigation of this matter. Additionally, some of the conferences with "SDR" were included within blocks of time spent on multiple tasks such that the time spent in the internal conference cannot be specifically identified. Accordingly, Mr. Fogel's hours are reduced by a total of 10 hours to account for work that was not adequately documented and/or suggested a duplication of efforts that a paying client would likely have reasonably disputed upon receiving a bill.[2]

---

[2] Plaintiff's outside counsel (Mr. Fogel and Mr. Rosenfield) represent that they reduced their hours by an estimated 10% to account for

See Hensley, 461 U.S. at 434 ("Hours that are not properly billed to one's *client* also are not properly billed to one's *adversary* pursuant to statutory authority." (quotation marks and citation omitted)); Lilienthal v. City of Suffolk, 322 F. Supp. 2d 667, 670 (E.D. Va. 2004) (finding that the "plaintiff's counsel have not borne their burden of establishing the reasonableness of the hours claimed" with respect to numerous conferences between counsel and client); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 373 (S.D.N.Y. 2005) (factoring into the court's decision to reduce the hours billed by more than one-third the fact that the plaintiff's attorneys "billed substantial amounts of time to cursorily described internal conferences with each other").

### ii. Steven Rosenfield, Outside Counsel

Mr. Rosenfield requests compensation for 58.7 hours in this matter. The majority of the billed time submitted by Mr. Rosenfield appears directly related to the litigation. That said, there are multiple time entries in the bills submitted by Mr. Rosenfield, some of which pre-date the complaint, that are not sufficiently specific to be compensated in this matter or

---

additional internal conferences, whereas Plaintiff's in-house counsel has specifically identified timesheet entries, including some multi-attorney conferences, for which compensation is not being requested. The Court considers these facts in making adjustments to the hours claimed by all of Plaintiff's counsel, but notes that multiple entries for which compensation is requested still lack a sufficient explanation as to the tasks being performed and/or suggest a duplication of efforts.

that reflect internal conferences with Mr. Fogel ("conf w/Jeff," "email fr/Jeff," "emails fr/to various PLN people & Jeff," etc.). While some of this time is surely compensable as appropriate strategic discussions, with the years of experience of both outside attorneys, as reflected by their claimed billing rates of $450 per hour, a portion of this time is needlessly duplicative and/or inadequately documented. Accordingly, Mr. Rosenfield's hours are reduced by a total of 8 hours to account for time entries that suggest unnecessary duplication of efforts and/or lack sufficient detail to demonstrate that they were reasonably expended on this litigation.

### iii. Lance Weber, Lead In-House Counsel

Mr. Weber, an experienced attorney and lead in-house counsel for Plaintiff, requests compensation for 72 hours in this matter. A review of his time entries, however, reveal multiple conferences with other in-house attorneys, communications with outside counsel that suggest some degree of general monitoring of the case, entries that are not sufficiently specific to render them compensable, and pre-complaint work dating back more than a year before the case was filed that appears, at least in part, to constitute administrative monitoring of censorship activities that formed the factual underpinnings for this case, as contrasted with work spent preparing for litigation of this case ("review letter from

prisoner," "review returned mail from jail," etc.). Considering all of Mr. Weber's entries and the above stated concerns, Mr. Weber's hours are reduced by a total of 8 hours.

### iv. Sabarish Neelakanta, In-House Staff Attorney

Ms. Neelakanta requests compensation for 10.5 hours. The bulk of Ms. Neelakanta's time appears to have been spent compiling time records in support of PLN's fee petition, compiling documents in support of declarations, and assisting in revising a brief. However, it also appears that Ms. Neelakanta spent time in conferences and sent internal emails, to include telephone/conference calls regarding this Court's first ruling on summary judgment, yet she does not appear to have performed any additional work on such matters subsequent to those calls. Accordingly, Ms. Neelakanta's hours are reduced by a total of 1 hour.

### v. Robert Jack, In-House Staff Attorney

Mr. Jack, an in-house staff attorney, requests compensation for 88.3 hours. Mr. Jack's time includes internal conferences, internal emails, time spent in a settlement conference where he was the second attorney for PLN (Mr. Fogel was present), time spent traveling from Florida to Virginia for the settlement conference, and various hours spent representing PLN in activities associated with censorship of PLN's monthly magazine (such as responding to prisoner correspondence, drafting

letters, and appealing censorship decisions) which, while relevant to this litigation, does not appear to directly advance the litigation. Stated differently, while Mr. Jack was likely providing necessary legal services to PLN when he was drafting appeal notices of individual censorship decisions, drafting such notices is conceptually distinct, at least to a degree, from performing research or other tasks that are necessary to advance or otherwise support the litigation of this case. Considering all of the above, Mr. Jack's hours are reduced by a total of 12 hours.[3]

### vi. Alissa Hull, In-House Staff Attorney

Ms. Hull, an in-house staff attorney, requests compensation for 8.2 hours. All of Ms. Hull's time spent on the case occurred prior to the filing of the complaint, the bulk of which involved drafting and editing an internal memorandum regarding censored materials, a task that is plainly appropriate for a less experienced attorney to perform to aid more experienced counsel in drafting a complaint. Although Ms. Hull spent time in internal conferences and reviewing internal emails, including a "case strategy" conference that occurred more than a year before the complaint was filed, it appears that Plaintiff has already written off a substantial portion of the time Ms. Hull

---

[3] Approximately eight hours of Mr. Jack's time was associated with traveling to Norfolk and participating in, and/or observing, the settlement conference.

recorded on her timesheets.   Accordingly, <u>no reduction</u> is made as to the 8.2 hours claimed by Ms. Hull.

### vii. Monique Roberts, In-House Staff Attorney

Ms.   Roberts,   an   in-house   staff   attorney,   requests compensation for 21.3 hours.   All of Ms. Roberts' time spent on the case occurred after the filing of the complaint, the bulk of which   appears   to   involve   document   production   and   discovery requests.   While Ms. Roberts appears to have participated in few internal conferences, she does bill for time that appears to be associated with Plaintiff's overall mission and matters forming the factual underpinnings for this case, as contrasted with work spent preparing for litigation of this case (such as drafting a letter   to   subscribers   to   inform   them   of   the   filed   complaint, researching and updating subscriber addresses, and responding to prisoner mail).   Considering the above, Ms. Roberts' hours are reduced by a total of <u>3 hours</u>.

### viii. Paralegals

In-house   paralegals   Zach   Phillips   and   Jeff   Antoniewicz request   compensation   for   26.3   hours   and   19.3   hours, respectively.   No affidavit was submitted by either of such individuals seeking to explain their experience or their role in advancing this litigation; rather, their hours are documented on a composite time record submitted by Mr. Jack.   ECF No. 91-2. It appears from such record that all of Mr. Phillips time was

spent prior to the filing of the complaint, with substantial time being incurred more than a year prior to the filing of the complaint.   Additionally, numerous time entries for both Mr. Phillips and Mr. Antoniewicz either include insufficient detail to demonstrate that such hours are reasonably related to the litigation, or reveal on their face that they are administrative in nature and/or lack a clear tie to this litigation ("research background information re new subscribers," "draft and mail letter from LW," "Assess and compile contact information for potential subscribers," "Assemble outreach mailing to new subscribers; enroll new subscribers for trial subscription"). Considering the above, a substantial reduction of hours is necessary as to both paralegals as Plaintiff failed to carry its burden to demonstrate that such time is compensable.   Mr. Phillips' hours are therefore reduced by 16 hours, and Mr. Antoniewicz's hours are reduced by 8 hours.

### 2. Reasonable Rate

As outlined above, a party entitled to recover attorney's fees under § 1988 "bears the burden of establishing the reasonableness of the hourly rates requested." Spell v. McDaniel, 824 F.2d 1380, 1402 (4th Cir. 1987).   This is generally accomplished "through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which

22

counsel can command in the [relevant] market.'" Project
Vote/Voting for America, Inc. v. Long, 887 F. Supp. 2d 704,
710 (E.D. Va. 2012) (quoting Spell, 824 F.2d at 1402). "The
relevant market for determining the prevailing rate is
ordinarily the community in which the court where the action is
prosecuted sits." Rum Creek Coal Sales, Inc. v. Caperton, 31
F.3d 169, 175 (4th Cir. 1994). Here, both parties have
submitted affidavits from disinterested counsel indicating the
hourly rates they purport to be reasonable. Additionally,
Plaintiff has submitted resumes for their in-house attorneys.

In determining the reasonable rates, the Court has
considered the relevant Johnson factors, including the labor
expended, the novelty and difficulty of questions raised, the
skill required to perform the legal services of the various
attorneys (and paralegals), the opportunity costs in pressing
the litigation, the experience and reputation of each attorney,
the asserted (but not proven) undesirability of the case, the
nature and length of the relationship between PLN and outside
counsel, and fee awards in similar cases. Barber, 577 F.2d at
226 n.28. Having considered all of these factors, the
affidavits from outside counsel, the awards in Project Vote and
Vollette v. Watson, No. 2:12cv231, ECF No. 128 (E.D. Va. July
23, 2013), the following chart documents the requested rate and
the rate determined to be reasonable by the Court:

| Attorney Name | Rate Requested | Rate Awarded |
|---|---|---|
| Jeffrey Fogel | $ 450 | $ 400 |
| Steven Rosenfield | $ 450 | $ 400 |
| Lance Weber | $ 350 | $ 325 |
| Sabarish Neelakanta | $ 275 | $ 230 |
| Robert Jack | $ 225 | $ 200 |
| Monique Roberts | $ 225 | $ 200 |
| Alissa Hull | $ 225 | $ 190 |
| Zach Phillips (para) | $ 125 | $ 100 |
| Jeff Antoniewicz (para) | $ 100 | $ 90 |

Several of the hourly rates adopted by the Court fall within the overlapping portions of the rate ranges proposed by the disinterested attorneys relied on by the parties. Those rates that fall outside the parties' proposed ranges do so by no more than twenty dollars per hour.

The above rates apply to all of the hours awarded in this case with the exception of the 33.6 hours that Mr. Fogel seeks to recover for his travel time. The fact that Mr. Fogel asserts that he should be compensated $50 more per hour than his typical billing rate based on market conditions in this District, yet still seeks compensation at his full hourly rate for the time he spent driving from the Western District of Virginia to the Eastern District, suggests a lack of billing judgment. See

24

Project Vote, 887 F. Supp. 2d at 716 (holding that "counsel should not recover their full market rate for travel from their offices in Washington, D.C., to Norfolk and Richmond, and that failure to reduce this time indicates a lack of billing judgment"); see also In re Outsidewall Tire Litig., 52 F. Supp. 3d 777, 790 (E.D. Va. 2014) (noting that the "decision to compensate an attorney for his or her travel time is within the district court's discretion," and discussing various approaches taken by courts to address travel-time billed at full rates). Moreover, Plaintiff's response to Defendants' challenge to the full-rate billing for travel time is uncompelling. Accordingly, the Court hereby reduces Mr. Fogel's hourly fee for travel time from $400 to $200, which adequately compensates him for the time he spent traveling. See Hensley, 461 U.S. at 443-44 (Brennan, J., concurring in part and dissenting in part) ("Section 1988 manifests a finely balanced congressional purpose to provide plaintiffs asserting specified federal rights with 'fees which are adequate to attract competent counsel, but which do not produce windfalls to attorneys.'" (quoting S. Rep. No. 94-1011, 94th Cong., 2d Sess. 6 (1976))). In the instant case, $200 per hour for travel time strikes an appropriate balance between the task billed, driving a car (which requires no legal skills of any kind), and counsel's opportunity costs of such travel-time,

giving due consideration to the prior relationship between Plaintiff and Mr. Fogel.

### 3. Lodestar Summary

The following table reflects the Court's lodestar calculation, which is the starting point for an attorney's fee award prior to any adjustments in step two or three of the required analysis.

| Attorney Name | Hours Req. | Hours Award. | Rate | Total |
|---|---|---|---|---|
| Jeffrey Fogel | 249.8[4] | 239.8 | $400 | $89,200[5] |
| Steven Rosenfield | 58.7 | 50.7 | $400 | $20,280 |
| Lance Weber | 72 | 64 | $325 | $20,800 |
| Sabarish Neelakanta | 10.5 | 9.5 | $230 | $2,185 |
| Robert Jack | 88.3 | 76.3 | $200 | $15,260 |
| Alissa Hull | 8.2 | 8.2 | $200 | $1,640 |
| Monique Roberts | 21.3 | 18.3 | $190 | $3,477 |
| Zach Phillips (para) | 26.3 | 10.3 | $100 | $1,030 |
| Jeff Antoniewicz (para) | 19.3 | 11.3 | $90 | $1,017 |
| TOTALS | 554.4 | 488.4 | n/a | $154,889 |

---

[4] Mr. Fogel's and Mr. Rosenfield's total hours include the time spent drafting both the opening brief and the reply brief in support of the instant motion. Defendants make no objection regarding the reasonableness of the time spent pursing fees, and it is "well settled that the time spent defending entitlement to attorney's fees is properly compensable under § 1988." Trimper v. City of Norfolk, Va., 58 F.3d 68, 77 (4th Cir. 1995) (citation omitted).

[5] Mr. Fogel's lodestar fee calculation of $89,200 includes 206.2 hours compensated at $400 per hour and 33.6 hours of travel time compensated at $200 per hour.

## B. Adjustment for Unsuccessful Unrelated Claims

After a lodestar figure is calculated, the Court must determine whether the fee award should be reduced to reflect the time counsel spent on unsuccessful claims that are unrelated to the successful claims. Robinson, 560 F.3d at 244. Here, Defendants do not assert that a fee reduction is required at this step, likely because they recognize that all of the claims "involve a common core of facts." Hensley, 461 U.S. at 435. Notably, because the "ordering forms" ban and the "sexually explicit" materials ban litigated in this case were simultaneously invoked by Defendants to justify exclusion of Plaintiff's monthly magazine from VBCC, the interrelated nature of the facts and claims appear to prevent the case from being effectively "viewed as a series of discrete claims." Id. In the absence of any argument asserting that a downward adjustment should be made at the second stage of the analysis, the Court makes no adjustment and moves on to considering Plaintiff's overall success on the merits.

## C. Adjustment for Degree of Success

The final step in determining a reasonable fee award is calculating a percentage of the lodestar figure that takes into account the "'degree of success enjoyed by the plaintiff.'" Grissom, 549 F.3d at 321 (quoting Johnson, 278 F.3d at 337). As described in greater detail above, when a plaintiff achieves

only "partial or limited success," such as in this case, the lodestar figure may be excessive notwithstanding the fact that all claims were "interrelated, nonfrivolous, and raised in good faith."  Hensley, 461 U.S. at 436.  In concluding that an adjustment to the lodestar figure is appropriate in this case, the Court notes that the Johnson factor addressing the "amount in controversy and the results obtained" was not subsumed within the prior analysis determining the lodestar figure.  McAfee, 738 F.3d at 89-90 (emphasis added).

Here, it is readily apparent that both Plaintiff and Defendants succeeded in certain aspects of this litigation. Defendants demonstrated that they were qualifiedly immune from money damages resulting from any of their acts associated with the long-term censorship of Plaintiff's publications through Defendants' maintenance and application of both the VBSO "ordering forms" policy and "sexually explicit" materials policy.  Moreover, Defendants demonstrated that Plaintiff did not suffer money damages based on the exclusion of its monthly magazine from VBCC because the banned issues were constitutionally excluded pursuant to the VBSO "ordering forms" policy.  While, prior to the entry of the consent decree, questions remained as to the amount of nominal damages on Plaintiff's due process claims and whether punitive damages were recoverable on such claims, these matters were resolved by

28

consent decree in a manner that avoided any monetary award. Accordingly, Plaintiff failed to recover any of the nominal, compensatory, or punitive damages sought in its amended complaint.[6]

More central to the litigation, as measured by the relief sought in the amended complaint, was Defendants' success on the "ordering forms" policy, as this Court concluded on summary judgment that such policy provided a valid justification for Defendants' decision to exclude all monthly issues of *Prison Legal News* (and other PLN brochures) from the VBCC. Based on such ruling, unless Plaintiff was willing to substantially modify the format of its monthly publication (something the case-record suggests that it was unwilling to do), such ruling would have allowed Defendants to continue to lawfully exclude Plaintiff's publications from VBCC.

---

[6] Although Plaintiff seeks to downplay its efforts to collect monetary damages, this Court is required to compare "what [the plaintiff] sought with what was awarded." McAfee, 738 F.3d at 93. Here, even as late as April 2015, Plaintiff reiterated its desire to proceed to trial in an effort to recover both nominal and punitive damages. Accordingly, while a fair reading of the amended complaint does not suggest that money damages were the motivator behind this litigation, Plaintiff pursued money damages at all stages of the case. Cf. Mercer v. Duke Univ., 401 F.3d 199, 205-06 (4th Cir. 2005) (indicating that while a court must consider "the purpose of the lawsuit" in that it must examine whether the lawsuit seeks injunctive relief or monetary relief, "the subjective motives of the plaintiff" are not relevant to "prevailing party" status nor relevant to determining "the extent of the relief obtained," noting that "[i]f the rule were otherwise, then every plaintiff recovering only nominal damages would claim that the only thing he was really ever interested in was a liability finding").

Notwithstanding these matters where Defendants enjoyed significant success, it is clear from the record that Plaintiff is a "prevailing party" based both on its securing of permanent injunctive relief as to two separate unconstitutional VBSO polices and through ultimately succeeding in ending future censorship of its publication via consent decree. See Mercer v. Duke Univ., 401 F.3d 199, 205 (4th Cir. 2005) (noting that when a § 1983 case seeks injunctive relief, "the relevant comparison, of course," for the purpose of gauging degree of success is "the scope of the injunctive relief sought to the relief actually granted").[7] First, Plaintiff succeeded in establishing that the VBSO maintained an unconstitutionally broad "sexually explicit" materials policy which was applied against Plaintiff to exclude issues of Prison Legal News. Through the course of this litigation, the VBSO modified its policy to remove the offending provisions and Plaintiff secured permanent injunctive relief precluding Defendants from returning to the prior policy.

Second, Plaintiff clearly succeeded on its due process claims associated with the VBSO's publication review policy. Such policy, as implemented at least for a period of time by the VBSO, violated published Fourth Circuit precedent as Defendants

---

[7] Plaintiff's amended complaint pursues several forms of declaratory and injunctive relief, including seeking a finding that Defendants violated the United States Constitution through their publication review policy and "sexually explicit" materials policy, as well as an injunction requiring Defendants to allow VBCC inmates to receive future issues of Prison Legal News. Am. Compl. 8-9, ECF No. 17.

were not sending notices to Plaintiff, a magazine publisher,
when the VBSO was refusing to deliver monthly magazines to
inmate subscribers. Additionally, even after the VBSO
publication review policy was modified (during this litigation)
to provide adequate notice, the review/appeal process in place
for a period of time was illusory. Through this litigation,
Plaintiff demonstrated that its due process rights had been
violated in two different ways and secured permanent injunctive
relief precluding Defendants from returning to their prior
unconstitutional policies.

Third, although Plaintiff never recovered any money damages
as to the due process violations, Plaintiff appeared entitled to
nominal damages and had at least the potential to recover
punitive damages. It appears that Plaintiff leveraged its
favorable position as to § 1983 damages on the due process
claims, as well as its intent to appeal this Court's summary
judgment holding as to the constitutionality of the VBSO
"ordering forms" policy, to secure a consent decree whereby
Defendants agreed to permit future issues of *Prison Legal News*
magazine into the VBCC. Cf. Am. Compl. 9, ECF No. 17
(indicating in the prayer for relief that Plaintiff sought
"[p]reliminary and permanent injunction requiring Defendants to
allow receipt of the PLN magazine"). Accordingly, while
Plaintiff does not have a monetary judgment by which to measure

31

its success in dollars and cents, Plaintiff's § 1983 case ultimately succeeded in putting an end to two separate unconstitutional policies/practices that applied to all mail and publications entering the VBCC and obtained a bargained for settlement that leveraged Plaintiff's position as to its § 1983 claims to secure a consent decree ending the ongoing censorship of Plaintiff's monthly magazine.[8]

Considering all of the above, the Court concludes that a **45% reduction in attorney's fees** is appropriate in this case to reflect Plaintiff's tangible and substantial victories on some of its § 1983 claims, while also taking into account Defendants' success in avoiding any monetary damages as well as defending the constitutionality of their prior exclusion of all of Plaintiff's publications from the VBCC based on the lawful VBSO "ordering forms" policy. The total attorney's fee award in this case is therefore reduced from $154,889 to $85,189. Such total

---

[8] There appears to be little doubt that, but for entry of the consent decree, Plaintiff would have succeed in obtaining nominal damages as to the due process violations. In Mercer, 401 F.3d at 203-04, the Fourth Circuit approved and applied the three factor test set forth in Justice O'Connor's concurrence in Farrar v. Hobby, 506 U.S. 103 (1992) to determine if a § 1983 plaintiff should recover attorney's fees when the plaintiff's success is limited to nominal damages. Here, although Plaintiff's success was plainly not limited to nominal damages, to the extent the three-part test is still instructive, all three factors favor an award (extent of relief obtained vs. that requested, the legal import of the claim on which the plaintiff succeeded, and whether the litigation served a public purpose or merely vindicated the litigant's individual rights).

figure represents a fee of **$60,214 to outside counsel**[9] and a fee of **$24,975 to Plaintiff's in-house counsel.**

### D. Litigation Expenses

"Because meritorious civil rights plaintiffs are private attorneys general enforcing important congressional policies, § 1988 is intended to encourage them to bring suit by shifting the costs of litigation to defendants who have been found to be wrongdoers." Daly v. Hill, 790 F.2d 1071, 1084 (4th Cir. 1986) (internal quotation marks and citation omitted). Accordingly, Fourth Circuit precedent "clearly establishes that a prevailing plaintiff is entitled to compensation for reasonable litigation expenses under § 1988." Id. Here, Defendants made no challenge to the recoverability or the reasonableness of the litigation expenses sought by Plaintiff. As Plaintiff's unchallenged expenses are supported by affidavits and other evidence, the

---

[9] Although having no bearing on this Court's determination of the appropriate attorney's fee award in this case, this Court observes that even after the modest reduction in outside counsel's compensable hours, the reduction to more reasonably compensate Mr. Fogel for his travel time, and the 45% reduction in fees to reflect mixed success, outside counsel is still recovering an effective rate of $195 per hour for all of the 308.5 hours claimed in this action (including travel time). As the Fourth Circuit has recently observed, "hourly rates of court-appointed counsel in federal criminal cases are substantially less" than the rate sought in most § 1983 cases, and help lend some context, even if not directly relevant. McAfee, 738 F.3d at 91 n.8. During the pendency of this action, appointed federal criminal defense attorneys were compensated at various rates between $110 and $127 per hour, with such rate applying to seasoned attorneys with decades of experience litigating federal felony cases. Accordingly, "[v]iewed from that perspective," Plaintiff's outside counsel was more than adequately compensated for all hours devoted to this case, especially when considering the fact that only partial success was achieved.

Court **AWARDS** $2,683 to Plaintiff's outside counsel and $6,048.10 to Plaintiff's in-house counsel for **litigation expenses,** representing the full amount requested by Plaintiff.

### IV. Conclusion

Having performed the required "lodestar analysis," having considered all of the appropriate factors set forth in <u>Barber</u>, and having adjusted the lodestar figure to reflect the "degree of success achieved" by Plaintiff, the Court **GRANTS** Plaintiff's motion for attorney's fees and litigation expenses.  ECF No. 88.

After making a downward adjustment to both the total hours and the hourly rate requested by Plaintiff, the Court hereby **AWARDS** attorney's fees to Plaintiff in the amount of **$85,189.** Such total figure represents a fee of **$60,214** to Plaintiff's **outside counsel** and a fee of **$24,975 to Plaintiff's in-house counsel.** As to litigation expenses, the Court **AWARDS $2,683** to Plaintiff's outside counsel and $6,048.10 to Plaintiff's in-house counsel.

The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
September  8  , 2015